IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TYJUANIA STOKES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1352-N |
| | § | |
| DALLAS COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Plaintiff Tyjuania Stokes' motion to strike portions of Defendants' summary judgment evidence[1] [34] and Defendants Dallas County Juvenile Department ("DCJD") and Dallas County's (collectively "Dallas County") motion for summary judgment [17]. Because the evidence Stokes objects to is properly authenticated, not conclusory, and admissible as an exception to the hearsay rule, the Court denies Stokes' motion. Because Stokes has failed to present a prima facie case of retaliation under Title VII and because no rational factfinder could find that DCJD terminated Stokes in retaliation for her exercising her rights under the Family Medical Leave Act ("FMLA"), the Court grants

---

[1]The Court notes that under the 2010 amendments to Federal Rule of Civil Procedure 56, a separate motion to strike is improper. Rather, objections to summary judgment evidence should be included in a response to a motion for summary judgment. *See* FED. R. CIV. P. 56(c)(2) & 2010 Advisory Committee Notes ("There is no need to make a separate motion to strike."). However, because briefing is complete on both the motion to strike and motion for summary judgment, and because the Court would have addressed Stokes' objections to Dallas County's summary judgment evidence in this Order anyway, it considers Stokes' motion here.

Dallas County's motion. And, because the Court grants summary judgment for Dallas County on Stokes' federal claims, the Court declines to exercise supplemental jurisdiction and accordingly dismisses Stokes' state workers compensation retaliation claim without prejudice.[2]

## I. ORIGINS OF THE STOKES - DALLAS COUNTY DISPUTE

As the Court must, it recites the facts in the light most favorable to Stokes, the nonmoving party.[3] DCJD employed Stokes from February 23, 2004 to March 8, 2010. *See* Compl. 2 [1]; App. Supp. Defs.' Mot. Summ. J. 5, 10 [19] [hereinafter Defs.' App.]. On July 3, 2008, Stokes requested to be transferred from DCJD because of a hostile work environment and harassment. Pl.'s App. Opp'n to Def. Dallas County's Mot. Summ. J. 156 [29] [hereinafter Pl.'s App.]. Her request was denied. *See id.* On September 3, 2008, Stokes questioned a change in practice at DCJD – namely she questioned her supervisors' pattern of pulling her away from other assigned areas to handle a coworker's assignment though that coworker was at work. *See id.* at 100-03, 156. The conversation between Stokes and her supervisor became heated, and Stokes' supervisor shouted and put his finger in her face. *Id.* at 156. Stokes received a notice of disciplinary action ("NEDA") related to the incident on

---

[2]*See* 28 U.S.C. § 1367(c).

[3]*See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) ("[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Coke v. Gen. Adjustment Bureau*, 640 F.2d 584, 595 (5th Cir. 1981) ("[F]acts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true.").

September 7, 2008 for insubordination and poor job performance, for which the penalty was a five-day suspension. *See id.* at 100-01, 103. The written reprimand also cited a prior verbal warning of which Stokes was not previously aware. *See id.* at 100, 103. Stokes appealed the written reprimand to Superintendent Gray, arguing in part that she was being harassed and was subject to a hostile work environment. *See id.* at 102-03. Although Gray found Stokes' actions "unjustifiable" and her arguments "unfounded," he reduced her original 5-day suspension to a 2-day suspension without pay. *See* Pl.'s App. 104. Stokes then appealed Gray's denial of her appeal to Deputy Director of Institutional Services, Barbara Roberts, and Roberts upheld the two-day suspension. *See* Compl. 3; Pl.'s App. 105-09. Stokes further appealed the decision to Assistant Director of Juvenile Services, Randy Wadley, stating that her supervisors had verbally assaulted her, upper management had talked about her in open forums in front of her peers, and that she was humiliated. *See* Compl. 3; Pl.'s App. 110-12, 157. Wadley informed Stokes in January 2010 that he had dismissed the suspension. *See* Compl. 3; Pl.'s App. 110-12.

Stokes received additional NEDAs as follows: (a) on October 28, 2008 for being tardy five times from July 28, 2008 to October 28, 2008, *see* Defs.' App. 15; (b) on January 11, 2009 for being tardy a sixth time, for which the punishment was a one-day suspension without pay, *see id.* at 16; (c) on February 24, 2009 for calling in sick less than an hour before her shift was to begin, *see id.* at 17; and (d) on November 5, 2009 for insubordination related to an August 27, 2009 directive from her supervisor to turn off and not turn back on a television – even where Stokes avers she did not turn the television back on – for which the

punishment was a five-day suspension without pay, *see id.* at 18; Pl.'s Resp. Br. Opp'n Def. Dallas Cnty. Juvenile Justice Ctr.'s Mot. Summ. J. 7 [28] [hereinafter Pl.'s Resp. Br.]; Compl. 4. Stokes appealed the November 2009 NEDA to Roberts, alleging in part that she was being harassed and was subject to a hostile work environment. *See* Pl.'s App. 113-16. Before receiving a response from Roberts, she further appealed the NEDA to Wadley, arguing in part that Superintendent Gray publicly humiliated her. *See id.* at 117. On December 23, 2009, Roberts upheld the five-day suspension. Stokes appealed Roberts' determination to Wadley arguing in part that her appeals had not been taken seriously. *See id.* at 118-22. On January 20, 2010, Stokes' supervisor wrote a memorandum stating that Stokes spoke back to him after he told her not to leave her assigned area on a frequent basis. *See id.* at 139. Stokes avers that she never spoke back to him. *See* Compl. 4; Pl.'s App. 159.

On September 15, 2009, Plaintiff injured her back at work. *See* Compl. 3. On September 25, 2009, her workers' compensation claim was denied because she was found to be a "problem employee." *See id.* From September 15, 2009 to October 5, 2009, Stokes took FMLA leave. *See* Pl.'s App. 126, 158. From February 27, 2010 to March 6, 2010, Stokes again took FMLA leave in order to care for her mother. *See* Compl. 4; Pl.'s App. 133-36. Upon her return on March 8, 2010, Wadley upheld Stokes' five-day suspension without pay for the November 5, 2009 incident and terminated her employment citing the January 20, 2010 incident. *See* Defs.' App. 41. Stokes appealed her termination on March 15, 2010, and the Juvenile Services Director, Michael K. Griffith, upheld the decision on March 25, 2010. *See* Pl.'s App. 140-43.

Stokes filed the instant action against Dallas County on July 10, 2010, alleging Title VII retaliation, FMLA retaliation, and workers' compensation retaliation. *See* Compl. 5. Dallas County subsequently moved for summary judgment, and Stokes moved to strike portions of Dallas County's summary judgment evidence on the grounds that it contains conclusory statements and statements that constitute inadmissible hearsay.

## II. THE COURT DENIES DALLAS COUNTY'S MOTION TO STRIKE

Affidavits are proper summary judgment evidence under Rule 56(c). *See* FED. R. CIV. P. 56(c). Courts may take into consideration the information contained in those affidavits to the extent that such information complies with the requirements of Rule 56(c)(4), including the requirement that the evidence therein would be admissible at trial. *See* 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738, at 335 (3d ed. 1998). Courts may also consider exhibits whether or not they are attached to the affidavit. *See* FED. R. CIV. P. 56(c)(1)(A) & 2010 Advisory Committee Notes (discussing Rule 56(c)(1)(A), (c)(4)).

Although unclear, it appears that Stokes objects to pages 3, 8, and 31-36 of Dallas County's appendix, along with the paragraphs of Human Resources Director Dr. Mattye Mauldin-Taylor's affidavit that support those pages.[4] *See* Pl. Tyjuania Stokes' Mot. Strike Portions Defs.' Summ. J. Evidence 2. Stokes' objections rest on the ground that Dallas

---

[4]The Court notes that page three of Dallas County's appendix is actually page three of Dr. Mauldin-Taylor's unexecuted affidavit. *See* Defs.' App. 3. Because, the Court considers only Dr. Mauldin-Taylor's executed affidavit, *see* Aff. Mattye Mauldin-Taylor, Ph.D. [22], Stokes' objection to that page is moot.

ORDER – PAGE 5

County has not properly authenticated the pages and they contain conclusory and/or inadmissible hearsay statements. *See id.* However, Mauldin-Taylor's affidavit properly authenticates the documents and establishes that they fall under the Rule 803(6) business records exception to the hearsay rule. *See* Aff. Mattye Mauldin-Taylor, Ph.D. 1. Additionally, the Court finds that the statements contained in the referenced pages are not conclusory, because they explain the underlying facts upon which they are based.[5] Accordingly, the Court denies Stokes' motion to strike.

### III. THE COURT GRANTS DALLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT

#### *A. Summary Judgment Standard*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Courts, however, need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[5]Black's Law Dictionary defines "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." BLACK'S LAW DICTIONARY 329 (9th ed. 2009).

(1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). However, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, courts resolve factual controversies in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### *B. Stokes Has Failed to Make a Prima Facie Case of Title VII Retaliation*

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) she experienced an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *See, e.g.*, *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). A "protected activity" under Title VII includes (a) opposing any practice of discrimination based on race, color, religion, sex, or national origin and (b) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing regarding discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). "Magic words are not required, but protected [activity] must at least alert an employer to the employee's reasonable belief

ORDER – PAGE 7

that unlawful discrimination is at issue." *See, e.g.*, *Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir. 2010).

Here, while Stokes appealed numerous instances of claimed harassment and subjection to a hostile work environment, there is no evidence that such claims were based on race, color, religion, sex, or national origin – let alone evidence that would alert her employer to the fact that she reasonably believed her supervisors subjected her to such discrimination. Instead, her appeals centered on unfair work distribution, personal embarrassment, and/or violations of departmental policy unrelated to race, color, religion, sex, or national origin. *See* Pl.'s App. 102-22, 137-38, 40-43, 156-60. As the Supreme Court has stated, Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Accordingly, the Court grants summary judgment for Dallas County on Stokes' Title VII retaliation claim.

### *C. Summary Judgment on Stokes' FMLA Retaliation Claim is Appropriate*

To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) the FMLA protects her, (2) she suffered an adverse employment action, and either that (3a) her employer treated her less favorably than an employee who had not requested leave under the FMLA, or (3b) her employer made the adverse decision because she took FMLA leave. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).

Then, where there is no direct evidence of discrimination, courts apply the *McDonnell-Douglas* burden-shifting framework.[6] *Richardson*, 434 F.3d at 332. Under this framework, if the employee successfully makes a prima facie case, the burden shifts to the employer to demonstrate a legitimate, nonretaliatory reason for the adverse employment action. *See Hunt*, 227 F.3d at 768. If the employer successfully makes this showing, the burden then shifts back to the employee to raise a fact issue regarding whether the employer's articulated reasons are pretextual. *See id.*

***1. Stokes Makes a Prima Facie Case.*** – Here, DCJD made the decision to terminate Stokes while she was on FMLA leave, and it actually terminated her on the day she returned to work after taking such leave. *See* Defs.' App. 36, 40; Compl. 4. Stokes relies on this temporal proximity as evidence that there was a causal relationship between the two events. The Fifth Circuit has held that temporal proximity alone is sometimes sufficient to satisfy the causation prong in a prima facie case, even where it is insufficient to establish but-for causation and impose liability. *See Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[T]emporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation. But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation." (italics and

---

[6]The Court does not apply the mixed-motive standard because at no time does Stokes allege that retaliation was one of multiple reasons for her termination. *Cf. Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (finding mixed-motive analysis applies where "the employee concedes that discrimination was not the *sole* reason for her discharge, but argues that discrimination was *a* motivating factor in her termination").

internal citations omitted)).  Thus, although this alone is insufficient to establish liability, Stokes has successfully made a prima facie case under *Strong*.

*2. Dallas County Presents Legitimate, Nonretaliatory Reasons for Terminating Stokes.* – In response, Dallas County argues that DCJD terminated Stokes because of the combination of the following occurrences: (a) insubordination demonstrated in the September 3, 2008 incident (September 7, 2008 NEDA), *see* Defs.' App. 37; (b) insubordination demonstrated in the August 27, 2009 incident (November 5, 2009 NEDA), *see id.* at 37, 40; (c) insubordination demonstrated in the January 20, 2010 incident, *see id.* at 37-38, 41; (d) two NEDAs for excessive tardies, *see id.* at 37, (e) February 24, 2009 NEDA for not following proper call-in procedures, *see id.*; and (f) the perception by supervisors and managers that Stokes' interactions with them were argumentative, overly aggressive, and insubordinate, *see id.* at 41.  Accordingly, Dallas County has met its burden to produce legitimate, nonretaliatory reasons for Stokes' termination.

*3. Stokes Makes a Weak Showing of Pretext.* – To rebut Dallas County's proffered reasons, Stokes argues that (a) as to the September 3, 2008 incident, the insubordination allegation is false because she was only questioning a policy change, and that Wadley ultimately rescinded the resulting five day suspension, *see* Pl.'s App. 100-103, 110-12; Pl.'s Resp. Br. 19; (b) as to the August 27, 2009 incident, the insubordination allegation is false because she did not disobey her supervisor; *see* Pl.'s App. 158; (c) as to the January 20, 2010 incident, it was a complete fabrication, *see* Pl.'s Resp. Br. 8; (d) as to the tardies, although she does not contest that she was tardy to work six times, the resulting one-day suspension

after her sixth tardy was a violation of Dallas County Policy 2.28, *see id.*; (e) she does not address the February 24, 2009 NEDA; and (f) although she does not specifically address the comments made by DCJD staff, she has maintained throughout the course of her pleadings and summary judgment evidence that she was in a hostile work environment and that her superiors harassed her. Additionally, Stokes argues that DCJD Human Resources Administrator, Cody Jones, falsely told Dr. Mauldin-Taylor that Stokes had failed to turn her FMLA paperwork in. *See id.* at 20. In this way, Stokes makes a weak showing of pretext – essentially arguing that Dallas County's proffered reasons are false. However, on balance, as the Court discusses below, Stokes ultimately fails to adequately rebut Dallas County's explanation for terminating her.

*4. Stokes' Prima Facie Case and Weak Showing of Pretext Are Insufficient Against Dallas County's Evidence to Survive Summary Judgment.* – The Supreme Court has held that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (emphasis omitted), but that such a showing will not always be adequate to survive summary judgment, *see id.* at 148 ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."); *see also Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000) (granting summary judgment where Court found overall lack of evidence of discriminatory intent even where plaintiff made some showing of pretext). "To survive

summary judgment, . . . the employee [must] present sufficient evidence for a reasonable factfinder to infer discrimination." *Memberu v. Allright Parking Sys.*, 93 Fed. App'x 603, 606 (5th Cir. 2004) (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

There is substantial evidence in the record to support the contention that DCJD's decision to terminate Stokes resulted from Stokes' numerous employment infractions. Namely, (a) as to the September 3, 2008 incident: NEDA issued by shift supervisor, Francis Nworji, Defs.' App. 11-12; decision of internal appeal from Superintendent Gray based on interviews with Stokes, Nworji, and Supervisor Douglas Chandler, Pl.'s App. 104; decision of internal subsequent appeal from Deputy Director of Institutional Services, Barbara Roberts, based on interviewing same, *id.* at 108-09; (b) as to the five tardies culminating in the NEDA of October 28, 2008: NEDA issued by Chandler and Nworji, Defs.' App. 13-15; concession by Stokes that these tardies occurred, Pl.'s Resp. Br. 19; (c) as to sixth tardy on January 11, 2009: NEDA issued by Chandler and Nworji, Defs.' App. 16; concession by Stokes that this tardy occurred, Pl.'s Resp. Br. 19; (d) as to the February 24, 2009 incident: NEDA issued by Chandler and Nworji, Defs.' App. 17; (e) as to the August 27, 2009 incident: NEDA issued by Superintendent Gray, *id.* at 18; termination letter with decision regarding internal appeal by Assistant Director of Juvenile Services, Randy Wadley, based on interviews with Stokes and staff; Pl.'s App. 137-38; (f) as to the January 20, 2010 incident: write-up by Nworji, Defs.' App. 39; emails from Human Resources Administrator, Cody Jones, to Director of Human Resources, Dr. Mauldin-Taylor, discussing internal

investigation based on interviews with Stokes, Nworji, and staff, *id.* at 35-38; termination letter discussing Jones' investigation, Pl.'s App. 138; decision of appeal of termination by Juvenile Services Director, Michael Griffiths, based on interview with Stokes and past hearings, *id.* at 143.

In response to this evidence, Stokes denies that her behavior warranted many of the NEDAs. However, she presents no evidence to support this position other than her own affidavit and her own written statements to DCJD management during the course of its internal investigations. Additionally, she concedes or does not refute that some of the behavior referenced in the NEDAs occurred.[7] And, although DCJD's decision to terminate Stokes occurred on or about March 3, 2010, while she was on FMLA leave, *see* Defs.' App. at 35-36, DCJD has presented unrefuted evidence that Dr. Mauldin-Taylor decided to terminate Stokes before Jones informed her that Stokes was on FMLA leave, *see id.* ("Her FMLA status does not impact the outcome of the investigation. The actions took place; we had to complete an investigation; and the recommended action had to be reviewed. I made

---

[7] For example, she concedes that she was tardy to work six times. *See* Pl.'s Resp. Br. 19 ("[T]he Defendant used as a basis for Plaintiff's termination that Plaintiff received a one day suspension without pay for excessive tardiness on February 17, 2009. This is true . . . ."). She takes issue only with the resulting one-day suspension from the sixth tardy, arguing that a suspension is improper until the eighth tardy as per DCJD policy. *See id.* at 8. Even if DCJD violated its own policy, it does not change the fact that Stokes concedes that she was tardy to work six times. Additionally, Stokes nowhere attempts to refute the February 24, 2009 NEDA stating that she called in sick to work less than an hour before her shift was to begin. Stokes also did not internally appeal the above NEDAs.

ORDER – PAGE 13

my decision without any information regarding her FMLA.").[8] As the Supreme Court has cautioned, temporal causation coupled with a weak showing of falsity may be insufficient to survive summary judgment. *See Reeves*, 530 U.S. at 148 (judgment as a matter of law). That is true in this case.

Although precedent requires the Court to draw all reasonable inferences in the light most favorable to Stokes, *see Diebold, Inc.*, 369 U.S. at 655 (1962), the Court is not obligated to turn a blind eye to the overwhelming probative value of the movant's evidence. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) ("[A] plaintiff who creates a genuine issue of material fact as to whether the employer has given the real reason for its employment decision will [not] always be deemed to have presented enough evidence to survive summary judgment. Instead, the court must consider all the evidence in its full context in deciding whether the plaintiff has met his burden of showing that a reasonable jury could conclude that he had suffered discrimination and accordingly summary judgment is inappropriate."). Indeed, the Supreme Court adopted the D.C. Circuit's view in *Aka* that "an employer would be entitled to [summary judgment] if the record conclusively revealed some

---

[8]The fact that Stokes avers that she did turn in her FMLA paperwork, *see, e.g.* Pl.'s App. 133-36, 160 (leave request approved by supervisor with notation, "Make sure you have documentation when returning to work[,]" FMLA request form signed by Stokes but not initialed by DCJD, and Stokes' affidavit), and that Dallas County avers that she did not, *see, e.g.* Defs.' App. 35; Aff. Mattye Mauldin-Taylor, Ph.D. 3, is thus not relevant. Additionally, although Jones was aware that Stokes was interested in taking FMLA leave before the time he reported the results of his investigation regarding the January 2010 matter to Dr. Mauldin-Taylor, *see* Defs.' App. 35-38, he had no authority to make the termination decision and, as stated in the text above, did not inform Dr. Mauldin-Taylor (who did have the authority to make the decision) of Stokes' FMLA leave until after Dr. Mauldin-Taylor had made the decision to terminate, *see id.* at 35-36.

other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. This Court, too, has espoused that view. *See Rosenblatt v. 7-Eleven,* Inc., 2007 WL 2187252, at *12 (N.D. Tex. 2007) (Fitzwater, C.J.) ("It is 'possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.'" (citing *Crawford*, 234 F.3d at 903)).

Thus, as it is the Court's role to determine from "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered," *Reeves*, 530 U.S. at 148, whether a reasonable jury could return a verdict in Stokes' favor, *see Matsushita*, 475 U.S. at 586-87, the Court finds that no rational jury could find that Dallas County's decision to terminate Stokes was in retaliation for her exercising her rights under the FMLA. Accordingly, summary judgment for Dallas County is appropriate.

## CONCLUSION

Because Dallas County's summary judgment evidence is properly authenticated, not conclusory, and admissible as an exception to the hearsay rule, the Court denies Stokes' motion to strike. Because Stokes has failed to make a prima facie case of retaliation under Title VII and because no rational factfinder could find FMLA retaliation, the Court grants summary judgment for Dallas County on those claims. The Court dismisses Stokes' state workers' compensation retaliation claim without prejudice.

Signed March 6, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 16